**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DECKERS OUTDOOR CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 12 C 377** |
| | ) | |
| **DOES 1-100 and DOES 101-500,** | ) | **Judge Ronald A. Guzman** |
| | ) | |
| **Defendants.** | ) | **Magistrate Judge Finnegan** |

## REPORT AND RECOMMENDATION

Plaintiff Deckers Outdoor Corporation ("Deckers") is known throughout the United States and elsewhere as a source of high quality footwear products, including the UGG brand of premium sheepskin footwear. In this lawsuit, Deckers claims that Does 1-100 and Does 101-500 ("Defendants"), who are individuals and business entities residing in China or other foreign jurisdictions, operate commercial websites targeting Illinois residents with offers to sell counterfeit versions of Deckers' UGG products. Deckers contends that Defendants utilize a variety of domain names set up by fictitious registrants (the "Accused Domain Names"), and create websites that incorporate copyright-protected images and product descriptions in order to mislead Illinois consumers into believing that they are purchasing genuine UGG products.

Deckers has filed a four-count Complaint alleging that Defendants' actions constitute trademark infringement, counterfeiting and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), cyberpiracy in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), and deceptive practices in violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815

ILCS 510 *et seq.* On January 27, 2012, the district judge granted Deckers' *ex parte* application for entry of (1) a sealed temporary restraining order ("TRO"), (2) a domain name transfer order, (3) an asset restraining order, (4) an expedited discovery order, and (5) an order authorizing service of process by e-mail and electronic publication. Thereafter, the district judge referred the matter to this Court for a Report and Recommendation on Deckers' request to convert the TRO into a preliminary injunction.

Defendants were served with notice of these proceedings, including the motion for a preliminary injunction and the hearing date, in the manner authorized by the district judge. (Gaudio Decl., Doc. 22-1 ¶ 2). No defendant appeared at the preliminary injunction hearing or submitted any written objection to the motion. Based on its review of the briefs and extensive exhibits submitted by Deckers, as well as the proposed Order, this Court recommends that the district judge grant Deckers' motion.

## DISCUSSION

A party seeking a preliminary injunction "must show that it has (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). If the moving party satisfies these threshold conditions, then "the district court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.* The greater the likelihood that the moving party will succeed on the merits of its claims, the less harm it must show in relation to the harm the nonmoving party will suffer if the preliminary injunction is granted. *Girl*

*Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *F.T.C. v. American Tax Relief LLC*, 751 F. Supp. 2d 972, 983 (N.D. Ill. 2010). For this reason, the Court first examines the merits of Deckers' claims before turning to the issues of irreparable injury and the balance of harms.

**A.    Likelihood of Success on the Merits**

    **1.    Trademark Claims**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1). Section 43(a) of the Lanham Act further imposes liability upon a defendant who "on or in connection with any goods or services, . . . uses in commerce any . . . false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the . . . origin, sponsorship, or approval of his or her goods . . . by another person. 15 U.S.C. § 1125(a)(1). A defendant violates the UDTPA by, among other things, (1) passing off goods as those of another, (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods, or (3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another. 815 ILCS 510/2(a).

Deckers' Lanham Act and UDTPA claims all involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08 C 400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). To establish a prima facie case of infringement or false designation of origin, Deckers must show that it has a distinctive mark warranting protection as a trademark, and that "the challenged mark is likely to cause confusion among consumers." *Facebook, Inc. v. Teachbook.com LLC*, __ F. Supp. 2d __, 2011 WL 4449686, at *7 (N.D. Ill. 2011) (citing *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000)); *Morningware, Inc. v. Hearthware Home Prods., Inc.*, 673 F. Supp. 2d 630, 634 (N.D. Ill. 2009). "[T]he ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks . . . Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a likelihood of confusion?" *Neopost Industrie B.V. v. PFE Int'l, Inc.*, 403 F. Supp. 2d 669, 684-85 (N.D. Ill. 2005) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992)).

Deckers clearly has a distinctive mark warranting protection as U.S. Trademark Registration No. 3,050,925, and the company has never licensed Defendants to use the mark in any form. (Evert-Burks Decl., Doc. 10 ¶ 3; Gaudio Decl., Doc. 11 ¶ 9). In determining whether consumers are likely to be confused by Defendants' marks, the Court considers: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of

4

another." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.* (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000).

Deckers has submitted extensive documentation showing that Defendants are selling counterfeit versions of UGG products that are virtually identical to those sold by Deckers, at only slightly below standard retail prices. (Gaudio Decl., Doc. 11, Exs. 1 and 2). Both Deckers and Defendants advertise and sell their products over the Internet, targeting consumers looking for UGG merchandise. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing between the real and counterfeit UGG products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine products to purchase fake ones instead. In that regard, Defendants use the UGG mark in many of their Accused Domain Names, such as cheapuggboots4sale.com and clearanceuggs-boots.com, and they advertise products that look almost exactly like UGG footwear and bear the UGG logo. (Gaudio Decl., Doc. 11, Exs. 1 and 2). Deckers does not have evidence of actual consumer confusion, but that is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are trying to "palm off" their goods as genuine Deckers products. *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).

Viewing the evidence as a whole, the Court believes that Deckers is likely to establish a prima facie case of trademark infringement and false designation of origin

under the Lanham Act and the UDTPA sufficient to support the entry of a preliminary injunction.

### 2. Cyberpiracy

The ACPA addresses "cybersquatting," or "the bad faith registration of domain names with intent to profit from the goodwill associated with the trademarks of another." *Vulcan Golf, LLC v. Google Inc.*, 726 F. Supp. 2d 911, 915 (N.D. Ill. 2010) (quoting *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1099 (C.D. Cal. 2009)). Cybersquatters "register well-known marks to prey on customer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site." *Id.* (quoting *Solid Host*, 652 F. Supp. 2d at 1100). To state a claim under the ACPA, Deckers must show that "(1) it had a distinctive or famous mark at the time the domain name was registered, (2) the defendant[s] registered, trafficked in, or used a domain name that is identical or confusingly similar to plaintiff's mark, and (3) the defendant[s] had a bad faith intent to profit from that mark."[1] *MasterCard Int'l Inc. v. Trehan*, 629 F. Supp. 2d 824, 830 (N.D. Ill. 2009) (quoting *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 914 (N.D. Ill. 2007)).

---

[1]    The ACPA identifies nine factors to consider in assessing bad faith intent, including: (1) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark; (2) the person's provision of material and misleading false contact information when applying for the registration of the domain name; (3) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others; and (4) the extent to which the mark incorporated in the person's domain name is not distinctive or famous.  15 U.S.C. § 1125(d)(1)(B)(i).  A court is not limited to considering only the enumerated factors, and "the most important grounds for finding bad faith 'are the unique circumstances of th[e] case.'"  *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 268 (4th Cir. 2001) (quoting *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 499 (2d Cir. 2000)).

There can be no dispute that Deckers' UGG trademark is famous with footwear consumers worldwide, as evidenced by the many celebrities who wear the products, and by news reports indicating that "UGG boots" is a heavily searched-for apparel item in online searches. (Evert-Burks Decl., Doc. 10 ¶ 11). In addition, Defendants register, traffic in and use domain names that are identical or confusingly similar to that famous mark. As noted, many of Defendants' Accused Domain Names directly incorporate the UGG mark, and Defendants use copyrighted photographs of Deckers' products in order to sell counterfeit versions of them. These facts manifest a bad faith intent to profit from the UGG mark, and the Court finds that Deckers is likely to succeed on the merits of its ACPA claim.

**B.     Irreparable Harm/Inadequate Remedy at Law**

Having determined that Deckers is likely to succeed on the merits of its claims, the Court next considers whether the company will suffer irreparable harm without a preliminary injunction, and whether it has an adequate remedy at law. There is a "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992). *See also AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 805 (7th Cir. 2002) (confirming "the law's presumption that trademark dilution or infringement threatens irreparable injury for which there is no adequate remedy at law."). "This willingness to find irreparable harm in trademark cases stems from an understanding that the 'most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation

7

should not be imperiled by the acts of another.'" *7-Eleven, Inc. v. Spear*, No. 10 C 6697, 2011 WL 830069, at *6 (N.D. Ill. Mar. 3, 2011) (quoting *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)).

Deckers has submitted evidence establishing that it has spent substantial amounts of money to market the UGG brand in the United States and other countries. The UGG brand has earned numerous awards and accolades, and is widely popular among consumers and celebrities alike. (Evert-Burks Decl., Doc. 10 ¶¶ 5, 7, 12). Magazines and newspapers have written stories about the success of the UGG brand, and Deckers regularly promotes its products with extensive, worldwide advertising campaigns. (*Id.* ¶ 12). The Court finds that Defendants' unauthorized use of the UGG trademark threatens to irreparably harm the reputation and goodwill Deckers has developed with respect to its high-quality, and highly-sought-after products. In 2011 alone, Deckers discovered over 17,000 domain names, including those operated by Defendants, that link to websites offering to sell counterfeit UGG footwear. This risks diluting the mark and undermining the many years Deckers has spent "nurturing its business." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001).

**C.    Balance of Harms/Public Interest**

In balancing the harms between Deckers and Defendants, the Court employs a "sliding scale approach: '[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor.'" *Girl Scouts of Manitou Council*, 549 F.3d at 1086 (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984)). Here, Deckers has a strong likelihood of prevailing on the merits, leaving Defendants with

a "proportionately small chance of showing that they have any right to sell or market UGG footwear." *Deckers Outdoor Corp. v. Liyanghua*, No. 11 C 7970, Doc. 37, at 6. As a result, Defendants have little basis for arguing that they will suffer any harm by virtue of the preliminary injunction. As one court has explained, "one who adopts the marks of another for similar goods acts at his own peril, since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 2d 994, 1006 (S.D. Fla. 1992).

The public interest also weighs in favor of entering a preliminary injunction. *See Girl Scouts of Manitou Council*, 549 F.3d at 1086 (the balancing process should encompass "any effects that granting or denying the preliminary injunction would have on nonparties."). In trademark infringement cases such as this, "the public interest is served by [an] injunction because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co.*, 233 F.3d at 469. The public certainly has an interest in not being confused or defrauded into buying counterfeit UGG products they believe to be real.

In sum, Deckers is likely to succeed on the merits of its claims, and the balance of harms weighs decidedly in its favor. On these facts, Deckers should prevail on its motion for a preliminary injunction.

## D. The Specific Equitable Relief Sought Remains Appropriate

Deckers asks that the TRO entered by the district judge on January 27, 2012 be converted into a preliminary injunction so that Defendants remain enjoined from the manufacture, importation, distribution, offer for sale, and sale of products bearing counterfeits of the UGG Trademark during the pendency of this litigation. Pursuant to the

TRO, Deckers caused dozens of PayPal accounts associated with Defendants' websites to be frozen. (Gaudio Decl., Doc. 22-1 ¶ 2). Deckers also served the TRO on the relevant domain name registries, requesting transfer of the Defendant names. (*Id.*). Deckers argues that a preliminary injunction is necessary so that the domain names remain in Deckers' control and the Defendants' PayPal and other accounts remain frozen until completion of these legal proceedings. Otherwise, Defendants would be able to continue to sell counterfeit UGG products and could move monies from such sales to offshore accounts.

The Court agrees that, under all the circumstances presented, the preliminary injunction that Deckers seeks is necessary and appropriate. Indeed, Deckers has obtained identical relief in other substantially similar proceedings in this district. *See Deckers Outdoor Corp. v. Does 1-55*, No. 11 C 10 (N.D. Ill. 2011); *Deckers Outdoor Corp. v. Liyanghua*, No. 11 C 7970 (N.D. Ill. 2011). This Court has reviewed the proposed preliminary injunction Order and recommends that the district judge sign the version attached as Exhibit A.[2]

## **CONCLUSION**

For the reasons stated here, this Court recommends that the district judge grant Deckers' Motion for Preliminary Injunction [21].

Pursuant to Fed. R. Civ. P. 72(b), specific written objections to this Report and Recommendation may be served and filed within fourteen (14) days from the date that this

---

[2]     The voluminous attachments to the Order identifying the Accused Domain Names and their registrants are not attached to this Report and Recommendation but instead will be hand delivered to the district judge who must enter the actual order.

order is served.  Failure to file objections with the Honorable Ronald A. Guzman within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the Report and Recommendation.

ENTER:

Dated: February 9, 2012

SHEILA FINNEGAN
United States Magistrate Judge

11

Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| DECKERS OUTDOOR CORPORATION, | ) | |
| | ) | Case No. 1:12-cv-00377 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Honorable Ronald A. Guzman** |
| | ) | |
| DOES 1-100 and DOES 102-500, | ) | **Magistrate Judge Sheila Finnegan** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## ORDER

THIS CAUSE being before the Court on Plaintiff Deckers Outdoor Corporation's ("Deckers") Motion for a Preliminary Injunction, and this Court having heard the evidence before it hereby GRANTS Plaintiff's Motion for a Preliminary Injunction in its entirety and orders that:

1.     Defendants, their officers, agents, servants, employees, attorneys, confederates, and all person acting for, with, by, through, under or in active concert with them be preliminary enjoined and restrained from:

    a.  using Deckers' UGG Trademark or any reproductions, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Deckers' UGG branded

product or not authorized by Deckers to be sold in connection with Deckers' UGG
Trademark;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine
UGG branded product or any other product produced by Deckers, that are not
Deckers' or not produced under the authorization, control or supervision of Deckers
and approved by Deckers for sale under Deckers' UGG Trademark;

c. committing any acts calculated to cause consumers to believe that Defendants'
products are those sold under the authorization, control or supervision of Deckers, or
sponsored or approved by, or connected with Deckers;

d. further infringing Deckers' UGG Trademark and damaging Deckers' goodwill;

e. otherwise competing unfairly with Deckers in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing,
distributing, returning, or otherwise disposing of, in any manner, products or
inventory not manufactured by or for Deckers, nor authorized by Deckers to be sold
or offered for sale, and which bear any Deckers' UGG Trademark or any
reproductions, counterfeit copy or colorable imitation thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning
the Defendant Domain Names or any other domain name that is being used to sell
counterfeit UGG products; and

h. operating and/or hosting websites at the Defendant Domain Names and any other
domain names registered or operated by Defendants that are involved with the
distribution, advertising, offering for sale, or sale of any product that is not a genuine

Deckers' UGG branded product or not authorized by Deckers to be sold in connection with Deckers' UGG Trademark.

2.   The domain name registries for the Defendant Domain Names, namely VeriSign, Inc., Neustar, Inc., Afilias Limited and the Public Interest Registry, within five (5) business days of receipt of this Order, shall change the registrar of record for the Defendant Domain Names to MarkMonitor or a registrar of Deckers' selection until further order by this Court, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to MarkMonitor or a registrar of Deckers' selection until further order by this Court.

3.   Those in privity with Defendants and those with notice of the injunction, including any Internet search engines, web hosts, domain-name registrars and domain name registries that are provided with notice of the injunction, cease facilitating access to any and all websites through which Defendants engage in the sale of counterfeit and infringing goods using the UGG Trademark.

4.   Discovery herein by Deckers may continue by providing actual notice, pursuant to subpoena, e-mail or otherwise, of this Order to any of the following:

   a.   Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them;

   b.   any banks, savings and loan associations, payment processors or other financial institutions, including without limitation, PayPal, or other merchant account providers, payment providers, third party processors, credit card associations (e.g., MasterCard and VISA), which receive payments or hold assets on Defendants' behalf; or

c. any third party service providers, including without limitation the online B2B selling platforms, Internet service providers, backend service providers, web designers, sponsored search engine or ad-word providers, shippers, domain name registrars and domain name registries who have provided services for Defendants.

5. Any third party providing services in connection with any Defendants, Defendants websites at the Defendant Domain Names or other websites operated by Defendants including without limitation, Internet Service Providers ("ISP"), back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers including PayPal, third party processors and other payment processing services, shippers, domain name registrars and domain name registries (collectively "Third Party Providers") shall within five (5) business days after receipt of such notice, provide to Deckers copies of all documents and records in such person or entity's possession or control relating to:

a. The identities and addresses of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them and the locations and identities of Defendants' operations, including without limitation, identifying information associated with Defendants' Websites, Defendant Domain Names and financial accounts;

b. Defendants' websites;

c. The Defendant Domain Names or any domain name registered by Defendants; and

d. Any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of

any banks, savings and loan associations, payment processors or other financial institutions, including without limitation, PayPal, Western Union, or other merchant account providers, payment providers, third party processors, credit card associations (e.g., MasterCard and VISA).

6. Defendants and any persons in active concert or participation with them shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further order form this Court.

7. Any banks, savings and loan associations, payment processors or other financial institutions, including without limitation PayPal, for any Defendant or any of Defendants' websites, shall immediately locate all accounts connected to Defendants or Defendants' websites and that such accounts shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further order form this Court.

8. Deckers may provide notice of these proceedings and service of process to Defendants by electronic mail at the e-mail addresses identified in Schedule A to Deckers' Complaint and electronic publication at the Defendant Domain Names which are transferred to Deckers' control; such notice shall be made immediately upon Deckers' receiving notice that the Third Party Providers have fully complied with the requirements of this Order.

9. Schedule A and Exhibits 1 and 2 attached to the Declaration of Justin R. Gaudio are unsealed.

10. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to Deckers or on shorter notice as set by this Court.

DATED _____        _____

U.S. District Court Judge Ronald A. Guzman